557 A.2d 775

**Josephine L. SMITH and Allen H. Smith, Co–Executors of the Estate of Reynold B. Smith, Deceased, Appellants,**

**v.**

**COMMONWEALTH NATIONAL BANK, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1988.

Filed April 17, 1989.

66

Allen H. Smith, Wrightsville, in propria persona.

Geoffrey S. Shuff, York, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal concerns the liability of an escrow holder for potential income lost on funds removed from an escrow account to pay taxes where the payee, Internal Revenue Service, lost the escrow holder's check, thus requiring the issuance of a new, later check. The trial court held that there was no liability for failure to keep the funds invested where, as here, the escrow holder had removed the funds and drawn the check in full compliance with the terms of the escrow agreement. We agree and affirm.

As part of a transaction involving the purchase of stock by City Investing Company and Uarco Inc. from the Estate of Reynold B. Smith, deceased, the co-executors of the estate, Josephine L. Smith and Allen H. Smith, Esquire, placed in escrow the sum of one million, four hundred seventy thousand ($1,470,000) dollars to insure the payment of estate and other taxes owed by the estate. The escrow holder was Commonwealth National Bank (CNB), which agreed to keep the escrowed amount invested and to release only those amounts which were directed by the parties to the transaction. The agreement provided that the escrow holder "shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized hereby."

On August 1, 1984, the parties to the transaction, including the executors of the decedent's estate, requested CNB to release the sum of eight hundred twenty-one thousand, four hundred eighty-four and eighty-nine one-hundredths ($821,484.89) dollars for the payment of federal estate taxes. CNB thereupon liquidated escrowed investments and

transferred $821,484.89 to a trust division account, on which it drew a cashier's check in like amount to Internal Revenue Service (IRS). The check, payable within sixty (60) days, was delivered to Allen H. Smith, a co-executor, who caused the check to be mailed to IRS the same day. IRS acknowledged receipt of the check on August 2, 1984.

On or about November 5, 1984, the parties settled and closed the escrow account. A balance of $924,071.75 was paid to the co-executors of the decedent's estate, who accepted the same "in full satisfaction and payment of monies due us upon termination of the escrow account." At the same time, they released CNB "from every claim which we may have in connection with said account." On December 13, 1984, CNB also delivered to the co-executors a check in the amount of $9,761.02, representing the final payment of income earned by the escrowed assets.

On or about March 26, 1985, CNB notified the co-executors that the check issued to IRS had not been presented for payment. At the request of IRS, a stop payment order was issued, and a new check was forwarded to IRS to replace the earlier, misplaced check. This check was subsequently presented and paid. IRS has made no claim for interest or penalty because of late payment.

The co-executors, Josephine and Allen Smith, thereafter commenced an action against CNB to recover interest on the amount of the unpaid IRS check from August 1, 1984 to July 11, 1985, the date on which the replacement check had been issued. They contended that they were entitled to recover this amount as damages (1) for CNB's violation of its duty to keep the escrow funds invested; (2) for CNB's negligence in failing to notify them that the IRS check had not been cashed after sixty (60) days; and (3) on equitable principles. Following the completion of discovery, CNB filed a motion for summary judgment, which the court granted. This appeal followed.

The escrow agreement contains language that it was to be governed by the laws of the State of New York. Choice of law provisions in contracts will generally be given effect.

See, e.g.: *Aluminum Co. of America v. Essex Group, Inc.*, 499 F.Supp. 53, 59 (W.D.Pa.1980); *Admiral Corp. v. Cerullo Electric Supply Co.*, 32 F.R.D. 379, 381 (M.D.Pa.1961). See also: Restatement 2d, Conflict of Laws § 187; *International Paper Co. v. Midvale–Heppenstall Co.*, 63 D. & C.2d 627 (1973). In New York, the relationship between an escrow holder and his principal is fiduciary in nature. See: *Schuman v. Conforti*, 41 A.D.2d 661, 340 N.Y.S.2d 686 (1973); *Avalon East, Inc. v. Monaghan*, 43 Misc.2d 401, 251 N.Y.S.2d 290 (1964). It has also been said that an escrow agent is a trustee and has a duty to act for any party with a beneficial interest in the trust property. See: *Oppenheim v. Simon*, 57 A.D.2d 1006, 394 N.Y.S.2d 500 (1977); *Helman v. Dixon*, 71 Misc.2d 1057, 338 N.Y.S.2d 139 (1972); *Avalon East, Inc. v. Monaghan, supra.* To fulfill his fiduciary duty, an escrow agent must strictly comply with the instructions given to him. See: *Grinblat v. Taubenblat*, 107 A.D.2d 735, 484 N.Y.S.2d 96 (1985); *Application of Akivis*, 128 Misc.2d 965, 492 N.Y.S.2d 316 (1985). See generally: 30A C.J.S. Escrows § 8.

A motion for summary judgment is properly granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *French v. United Parcel Service*, 377 Pa.Super. 366, 370, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). In the instant case, the facts are not in dispute, and our review confirms that the trial court properly determined that CNB was entitled to judgment as a matter of law.

■ The escrow agreement, although it required the escrow holder to invest the amount held, also provided that upon receipt of written instructions it "shall release such portion of the Escrowed Amount as it is directed to release to the person or persons specified in such instructions." The agreement also provided that "[t]he Escrow Agent shall be obligated only for the performance of such duties as are specifically set forth in this Escrow Agreement." The escrow holder in this case complied fully with its

instructions. All funds were invested in accordance with instructions from the principals, and moneys were withdrawn only upon specific instructions. Indeed, the check for the amount withdrawn was delivered to one of the principals, who caused the same to be mailed to IRS.

Appellants contend that CNB violated its agreement by placing the withdrawn funds in a non-interest bearing account from which it drew the check to IRS. Although we now know with the benefit of hindsight that the check was not promptly negotiated by IRS, this is an inadequate basis for imposing liability on the bank. "Hindsight is not helpful in fixing responsibility." *Hazzard v. Chase National Bank of New York*, 159 Misc. 57, 287 N.Y.S. 541, 559 (1936). It is an inadequate basis on which to hold a trustee to requirements different than those included in its agreement. *Id.* at 73, 287 N.Y.S. at 556. The funds were withdrawn from the escrow account and delivered in accordance with instructions delivered to the bank, and we will not read into the agreement a duty, not required by the express terms of the agreement, to keep withdrawn funds invested until a check therefor has been negotiated.

The decision of *In re J & J Record Distributing Corp.*, 80 B.R. 53 (1987), *aff'd*, 84 B.R. 364 (E.D.Pa.1988), does not require a different result. In that case a law firm acting as counsel for a debtor-in-possession had placed the debtor's funds in a non-interest bearing account in anticipation of making prompt distribution. After a four month period of inactivity, however, the law firm allowed the funds to remain uninvested. In imposing liability for breaching a duty as trustee on behalf of the debtor's creditors to keep the funds invested, the court relied upon specific language in the Bankruptcy Code. Moreover, the instant case is factually distinguishable. In this case the escrow holder did not fail to keep escrow funds invested but, pursuant to the terms of its written agreement, kept the funds invested and released them only as directed by its principals.

■ For similar reasons we reject appellants' argument that CNB breached a duty to inform the principals when the

check was not presented for payment within sixty days after issuance. The check had been issued to IRS in payment of taxes owed by the estate in accordance with instructions given by the principals. The funds set aside for payment were subject to demand by IRS, which had a preferred right thereto. It was IRS, and not appellants, which was entitled to the funds. After the check had been issued it was IRS which held the ownership rights therein. If appellants wished to impose additional duties upon the bank, those duties should have been included in the escrow agreement. We will not impose additional duties not contained therein.

█ Finally, appellants are not entitled to recover on the basis of general principles of equity. In the first place, CNB was not unjustly enriched by the IRS delay in presentment. It did not earn and retain income earned on the principal while its check was outstanding.[1] Secondly, as we have already observed, it was IRS and not appellants who held ownership rights in the check and who was entitled to demand the funds which had been withdrawn to pay estate taxes. Thus, if anyone would be entitled to claim interest, it would be IRS and not appellants. In fact, however, IRS has made no demand on appellants for interest; and appellants have sustained no loss.

Appellants' reliance upon the decision of the New Jersey Superior Court in *Santos v. First National State Bank of New Jersey*, 186 N.J.Super. 52, 451 A.2d 401 (1982), is misplaced. There, at a customer's request, the bank had issued a cashier's check made payable to the customer. The customer later claimed that the check had been lost and sued to have the bank replace the check or credit his account. The issue for the court involved the relief to which the customer was entitled. The court ordered the bank to issue a certificate of deposit in the customer's name which was to be held as security for the bank's liability on

1. If such had been the case, New York law holds that equity may intervene to require the bank to disgorge the interest. See, e.g.: *Raab v. Bowery Savings Bank*, 77 Misc.2d 1054, 355 N.Y.S.2d 748 (1974).

the check so long as it remained outstanding during the applicable six year period of the statute of limitations. As a matter of equity, the court also awarded pre-judgment interest. The court did not hold that equity required the payment of interest to the drawee of a check who failed to present the check for payment within a prescribed time.

Because we affirm the trial court's holding that appellants do not have a legally cognizable claim for interest against CNB, we find it unnecessary to determine the effect of the release which appellants signed and delivered to the bank upon termination of the escrow agreement. As a general rule, however, the matters embraced by a release include all those things which are clearly and specifically set forth and which can be ascertained from a reading of the document in question. *Public Service Co. of Colorado v. Chase Manhattan Bank, N.A.*, 577 F.Supp. 92, 109 (S.D.N.Y.1983). See also: *ACLI International Commodity Services, Inc. v. Banque Populaire Suisse*, 609 F.Supp 434 (S.D.N.Y.1984); *Sparler v. Firemans Insurance Co. of Newark, N.J.*, 360 Pa.Super. 597, 521 A.2d 433 (1987), *appeal denied*, 518 Pa. 613, 540 A.2d 535.

Because appellants are not entitled to the damages claimed in this action, the summary judgment entered by the trial court is affirmed.