799 A.2d 32 (2002)
351 N.J. Super. 521
Ramon ROSARIO, an infant, by his Guardian ad Litem, Virginia ROSARIO, and Virginia Rosario and Ruben Rosario, Individually, Plaintiffs,
v.
David HAYWOOD, University Bus Company, Borough of Ramsey, Rodrick J. Mullin, John Doe 1 through X (X being a number as yet undetermined), being persons or corporations whose identities are presently unknown, Defendants, and
Thomas E. Mariani and Mariani Electric, Defendants/Third-Party Plaintiffs,
v.
Borough of Ramsey, Third-Party Defendant, and
Ramsey Board of Education, Third-Party Defendant/Fourth-Party Plaintiff-Respondent,
v.
American Guarantee and Liability Insurance Company, Fourth-Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 2002.
Decided June 17, 2002.
*35 Vincent E. Reilly argued the cause for appellant (McElroy, Deutsch & Mulvaney, attorneys; Mr. Reilly, of counsel and on the brief).
Gerard H. Hanson argued the cause for respondent (Hill Wallack, attorneys; Jeffrey L. Shanaberger, Princeton and Todd J. Leon, on the brief).
Before Judges EICHEN, COLLESTER and LINTNER. *33
*34 The opinion of the court was delivered by LINTNER, J.A.D.
After exiting a school bus operated by defendant University Bus Company (University Bus), Raymond Rosario, a minor, was struck by a motor vehicle operated by defendant Thomas Mariani. A complaint on behalf of Rosario by his parents, both as Guardian ad Litem and individually, was filed against Mariani, his employer Mariani Electric (Mariani), University Bus, bus driver David Haywood, the Borough of Ramsey (the Borough) and Rodrick J. Mullin, an employee of the Borough. The Ramsey Board of Education (the Board) was joined as a third-party defendant and in turn filed an answer and fourth-party complaint naming American Guarantee and Liability Insurance Company (American Guarantee) and seeking coverage and defense costs as an "additional insured" under a liability policy issued by American Guarantee to University Bus. The Board also sought indemnification and defense costs from University Bus, alleging that University Bus had breached its contract with the Board requiring University Bus to obtain insurance coverage designating the Board as the "named insured."[1] A fourth amended complaint was eventually filed by plaintiff, adding the Board as a defendant.[2] It alleged specifically that the Board
breached its obligation in that it failed to provide certain information to the bus company that would have enabled their drivers to operate the necessary signals on said buses to assure safe crossing by the infant plaintiff, and were further negligent in that they could have prevented the creation of any danger to the plaintiff by locating his bus stop in a manner which would avoid having to cross the roadway wherein the accident occurred.
On July 16, 2001, American Guarantee moved for summary judgment seeking to dismiss the Board's claim that it provide *36 coverage and a defense for the Board. The Board countered by filing a cross-motion to require American Guarantee to provide a defense and coverage. On November 16, 2001, following oral argument on the motions, the judge denied American Guarantee's motion and granted summary judgment in favor of the Board. An order memorializing the judgment requiring American Guarantee to defend and indemnify the Board as an "additional insured" was filed on November 21, 2001. On January 18, 2002, we granted American Guarantee's motion for leave to appeal. R. 2:2-4.
We hold that, although American Guarantee's policy does not cover claims against the Board for independent negligence unconnected with the actual operation of the bus, its language expresses a clear intent to cover claims resulting from the Board's negligent conduct implicating the actual operation of the bus or its driver. We also hold that the allegations asserted in plaintiffs' fourth amended complaint trigger American Guarantee's duty to defend the Board. Accordingly, we reverse the order insofar as it requires American Guarantee to provide the Board with indemnity coverage for the Board's independent acts of negligence not arising out of the operations performed by, or on behalf of, University Bus or its driver and remand for further proceedings. Unaffected by our decision is any pending breach of contract claims for failure to acquire insurance coverage for the Board as the "named insured" pursuant to the provisions of the Pupil Transportation Contract.
The underlying accident occurred on September 8, 1998 after Haywood stopped the school bus to permit Ramon Rosario to exit and cross at a designated crosswalk on South Central Avenue in Ramsey. Rosario exited and walked to the rear of the bus and was struck by Mariani's vehicle as he crossed South Central Avenue.
The Pupil Transportation Contract required University Bus to provide the following insurance for the benefit of the Board:
5. The transportation contractor agrees to furnish automobile public liability insurance covering the operator of every vehicle transporting pupils and drivers thereof in the amount specified in the bid specifications.... The aforesaid insurance shall cover the local board as a named insured....

6. The transportation contractor will defend and indemnify the local board and any agent, officer, or employee thereof and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of actions of the transportation contractor occasioned wholly or in part by any act or omission to act of the transportation contractor, its agent, its subcontractor, or its employees. (Emphasis added.)
A Commercial Automobile Insurance policy was acquired from American Guarantee. The Common Policy Declaration page lists Scholastic Bus Company as the "Named Insured."[3] A Manuscript Endorsement (the endorsement), making up the second page of the declaration, described the following coverage under the heading "BLANKET ADDITIONAL INSURED":
Additional insured shall include any entity where shown on a certificate of insurance or to whom the named insured is *37 obligated by a written "insured contract" or agreement to provide insurance: however, this coverage shall only apply with respect to liability arising out of operations performed by or on behalf of the named insured. Further, this coverage shall not apply to damages arising out of the negligence of the additional insured unless such coverage is required in an "insured contract" with the additional insured and unless the "insured" shall become legally liable to pay for such damages through the enforcement of that contract. (Emphasis added.)
The Certificate of Insurance issued to the Board listed "Scholastic Bus Co. & /OR University Bus Co. & /OR Student's Bus Co." as "insured" and provided that the Board "is included as an additional insured, but only as respects the operations of the named insured."
The motion judge found the "blanket additional insured" provision to be ambiguous and interpreted the language broadly, finding that it was the intent of the parties to confer coverage for liability arising from the Board's independent negligence. He also determined that, to the extent the provision did not provide such coverage, it was void as against public policy.
On appeal, American Guarantee argues that the endorsement is neither ambiguous nor against public policy. The Board, on the other hand, urges that it is entitled to coverage for its independent acts of negligence under the language of the endorsement, and that the motion judge correctly found the endorsement to be ambiguous and against public policy. The Board further asserts that University Bus is contractually obligated to provide additional insurance coverage to the Board as a "named insured" and is liable for contractual damages to the Board under the terms of the Pupil Transportation Contract.
We note at the outset that University Bus's contractual obligations under the Pupil Transportation Contract in which it agreed to furnish insurance covering "the local board as a named insured" was not the subject matter of the order now under appeal. We therefore make no determination respecting the Board's contention that University Bus is contractually liable to the Board for coverage arising from the Board's independent acts of negligence, leaving the determination of that issue to further proceedings. See Antenucci v. Mr. Nick's Mens Sportswear, 212 N.J.Super. 124, 130-131, 514 A.2d 75 (App.Div. 1986).
We concentrate instead on the two remaining issues: (1) whether coverage is provided by the express language of the American Guarantee policy for plaintiffs' allegations against the Board and (2) whether that language, if viewed as excluding coverage for independent acts of negligence on the part of the Board, is void as against public policy. We begin with a statement of the basic principles that guide our analysis of the issues on appeal. In a dispute over the interpretation of an insurance contract, it is the insured's burden "to bring the claim within the basic terms of the policy." Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J.Super. 365, 377, 678 A.2d 1152 (App.Div.1996) (citing Diamond Shamrock Chems. v. Aetna Cas. & Sur. Co., 258 N.J.Super. 167, 216, 609 A.2d 440 (App.Div.1992), certif. denied, 134 N.J. 481, 634 A.2d 528 (1993)). On the other hand, where the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim. Id. (citing Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 26, 483 A.2d 402 (1984)). Indeed, *38 insurance policy exclusions require strict construction. Ariston Airline & Cater. Sup. Co., Inc. v. Forbes, 211 N.J.Super. 472, 478, 511 A.2d 1278 (Law Div. 1986) (citing Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970)). Further, construing insurance policies, as with any contract, requires a broad search "for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App.Div.1994) (citations omitted). Where the express language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." Ibid. In interpreting insurance policies, "the words of an insurance policy are to be given their plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001). "In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999). When there is ambiguity in the contract, it should be interpreted "to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Id. at 671, 730 A.2d 1278. However, "a court should not engage in a strained construction" in order to find coverage. Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990).
A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Lee v. General Accident Ins. Co., 337 N.J.Super. 509, 513, 767 A.2d 985 (App.Div.2001) (citing Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979)). "An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." Powell v. Alemaz, Inc., 335 N.J.Super. 33, 44, 760 A.2d 1141 (App.Div. 2000). Moreover, not every "far-fetched interpretation of a policy will be sufficient to create an ambiguity requiring coverage." Boddy v. Cigna Prop. & Cas. Co., 334 N.J.Super. 649, 658, 760 A.2d 823 (App.Div.2000). Therefore, while the expectations of the insured are one factor to be taken into consideration when the meaning of a phrase is clear, those expectations must be "objectively reasonable" and not contrary to the policy language. Gibson, supra, 158 N.J. at 670-71, 730 A.2d 1278.
Application of these principles convinces us that the wording of American Guarantee's endorsement neither is ambiguous nor fails to comport with the expectations of the parties. Both the Certificate of Insurance and the endorsement make it clear that as an additional insured the Board is only covered with respect to the operations of the named insured, University Bus. The endorsement expressly excludes coverage for damages "arising out of the negligence of the [Board] unless such coverage is required in the [contract between University Bus and the Board] and unless [University Bus] shall become legally liable to pay for such damages through the enforcement of that contract." The Pupil Transportation Contract requires University Bus "to furnish automobile public liability insurance covering the operator of every vehicle transporting pupils and [the] drivers thereof." Nowhere does the Pupil Transportation Contract require coverage for damages arising from the Board's independent negligence unrelated to the actual operation of the bus or its driver. The indemnity provision, which requires University Bus to indemnify the Board for damages "arising from or out of actions of [University Bus] occasioned *39 wholly or in part by any act or omission to act of University Bus, its agent, its subcontractor, or its employees" is consistent with the provision describing the insurance to be furnished. Conspicuously absent from the Pupil Transportation Contract indemnity provision is any "plain language" by which the indemnitor (University Bus) agrees to indemnify the indemnitee (the Board) for the indemnitee's independent acts of negligence not connected with the operation of the bus or its driver. See Mantilla v. NC Mall Assocs., 167 N.J. 262, 770 A.2d 1144 (2001).
We conclude, therefore, that while the endorsement does not cover the independent negligence of the Board, it does, when read in conjunction with the insured contract, create coverage for claims resulting from allegations of negligence on the part of the Board respecting the actual operation of the bus and its driver. The assertion found in the complaint, that the Board "failed to provide certain information to the bus company that would enable their driver to operate the necessary signals" thereby "assuring safe crossing by the infant plaintiff," constitutes an allegation of negligent conduct on the part of the Board, impacting upon the actual operation of the bus and its driver. Liability of the Board for damages flowing from such conduct is clearly intended to be covered under the plain wording of American Guarantee's policy.
We next consider the Board's contention that the policy is void as against public policy. The Board argues that N.J.A.C. 6A:27-1.5 is controlling and renders the policy void. The Board also argues that because the Board cannot be held vicariously liable under the New Jersey Tort Claims Act, N.J.S.A. 59:1-3, liability coverage excluding the Board's independent negligence is meaningless.
N.J.A.C. 6A:27-1.5, entitled "Insurance," provides:
(a) Anyone providing for the transportation of students to and from school or school related activities shall furnish liability insurance for bodily injury and property damage in a minimum amount of $1,000,000 combined single limit per occurrence for all vehicles which are used for this purpose.

(b) Insurance shall be obtained through a company authorized to issue insurance in New Jersey and shall cover the district board(s) of education and any transportation agency providing for joint transportation services for the resident district as an additional named insured.

1. Parents or legal guardians transporting only their own child or children shall be exempt from the requirement to provide the certificate of insurance that names the district board of education as an additional named insured.
(c) Self-insured transportation contractors and district boards of education as provided in N.J.S.A. 48:4-12 and 13 shall file a certificate of self-insurance with the county superintendent of schools.
(d) Policies or certificates of insurance shall accompany all contracts or contract renewals when they are submitted to the county superintendent of schools for approval.
(e) Policies or certificates of insurance shall be submitted to the district board of education and the county superintendent of schools whenever policies are amended, revised or renewed.
American Guarantee conceded at oral argument before us that if the Board was designated in the policy as an additional "named insured" the Board would be covered for its own independent negligent acts. The Board argues that the policy issued by American Guarantee is therefore *40 void as against public policy because the policy secured by University Bus did not name the Board as a "named insured."
N.J.A.C. 6A:27-1.5 applies to anyone providing transportation for students and requires the provider to furnish liability insurance for all vehicles used for such purposes. The section that mandates coverage of the Board as a named insured applies to circumstances where the Board and the transportation agency are "providing for joint transportation services for the resident district." The Administrative Code requirement obligates the transportation contractor. It does not control the insurance provider nor does it mandate the language to be used in the policy. Thus, the responsibility to provide additional coverage to a board of education protecting it from liability for its own independent negligence falls upon the transportation contractor, not the insurer.[4]
Likewise unavailing is the Board's argument that coverage protecting it for damages arising from the operation of the bus and its driver is illusory. Under the Pupil Transportation Contract, the Board retained a large measure of control over the hiring and supervision of bus drivers. The Board may require University Bus to replace a driver if, in its judgment, the driver is unsuitable. Thus, for example, a decision to replace an unsuitable driver temporarily with a board employee would render the Board liable if its employee later negligently injures someone while operating the bus. Under such circumstances, coverage would be afforded under the American Guarantee policy. Likewise, any negligent interference by the Board with the actual operation of the bus would trigger coverage.
Finally, we note that the obligation of an insurer is not limited to indemnity but is two-fold, including the duty to defend. The duty to defend, which is itself a meaningful benefit, is broader then the duty to indemnify. Robert W. Hayman, Inc. v. Acme Carriers, Inc., 303 N.J.Super. 355, 357, 696 A.2d 1125 (App. Div.1997). It is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992). The duty is triggered when the complaint against the insured "states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). To determine whether an insurer has a duty to defend, the complaint is "laid alongside the policy" to compare the allegations with the language of the policy. Ibid. The duty to defend arises when the comparison reveals that, if the allegations of the complaint are sustained, the insurer will be required to pay any resulting judgment. Any doubts are resolved in favor of the insured. Voorhees, supra, 128 N.J. at 173, 607 A.2d 1255; Danek, supra, 28 N.J.Super. at 77, 100 A.2d 198. "Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." Ibid. "When multiple alternative causes of action are stated, the duty will continue until *41 every covered claim is eliminated." Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255. The wording of the complaint need not be articulate so long as a covered claim is made. Ibid.
Here, the complaint specifically alleges, in part, that the Board "breached its obligation in that it failed to provide certain information to the bus company that would have enabled their drivers to operate the necessary signals on said buses to assure safe crossing by the infant plaintiff." Although we are convinced that American Guarantee's policy did not afford coverage to the Board for independent acts of negligence unconnected with the operation of the bus or its driver, we are equally satisfied that the complaint alleges wrongful conduct that is clearly intended to be covered. Thus, the complaint, as written, notifies American Guarantee that plaintiff is seeking damages from the Board for its negligent conduct respecting the actual operation of the bus and its driver. If plaintiff is able to prevail upon this allegation, liability coverage would be imposed.
Accordingly, we reverse the order entering judgment against American Guarantee and direct the trial judge to enter declaratory judgment in favor of American Guarantee, dismissing all claims for indemnity coverage for injuries sustained by plaintiff as a result of the Board's independent acts of negligence not arising out of operations performed by or on behalf of University Bus or its driver. We remand to permit further proceedings consonant with American Guarantee's duty to defend and any remaining claims for breach of the Pupil Transportation Contract.
Reversed in part and remanded in part for further proceedings consistent with this opinion.
NOTES
[1] According to the representations of counsel during the summary judgment argument, Scholastic Bus Company, who is listed as the named insured on the American Guarantee policy, had apparently been joined as an additional party on the breach of contract claim. We cannot tell from the record supplied whether the producing agent, P.A. Post Agency L.L.C., has also been made a party.
[2] The fourth amended complaint was sent to us by the Board at our request following oral argument. The Board also submitted additional documents and a supplemental argument, which were not included in the Board's appellate brief or appendix. We do not consider these additional documents.
[3] Although the record does not indicate the relationship between Scholastic and University Bus, the parties agree that the policy was issued to University Bus.
[4] Thus, it might be argued that a commercial motor vehicle policy issued to a transportation contractor designating the board as a "named insured" would cover the Board for injuries arising from the use of a school bus where there is independent negligence on the part of the Board for failing to suspend transportation services due to inclement weather as required by N.J.A.C. 6A:27-1.1(c).