Dante MITCHELL, Defendant,

v.

PROVIDENCE WASHINGTON
INS. COS., Plaintiff.

No. CIV.A. 01–5782.

United States District Court,
E.D. Pennsylvania.

March 31, 2003.

Bruce M. Rotfeld, Rotfeld & Rotfeld, Phila, for Dante Mitchell, Plaintiff.

Joseph R. Fowler, Post & Schell, P.C., Allan C. Molotsky, Post & Schell, P.C., Philadelphia, for Providence Washington Insurance Companies, Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Dante Mitchell was injured in an automobile accident that occurred while he was riding as a passenger in a Ryder rental truck. The Ryder truck was covered by an automobile insurance policy issued by defendant Providence Washington Insurance Companies ("Providence Washington"). Mitchell seeks underinsured motorist (UIM) benefits under this policy. Providence Washington has brought this declaratory judgment action seeking a declaration by the court that Mitchell is ineligible for UIM benefits under the circumstances of this case.

In order to answer Providence Washington's request for declaratory judgment, the court must examine the terms and the relationships to each other of three separate insurance policies: one, the Providence Washington policy that covered the Ryder truck; two, the policy covering the vehicle driven by the tortfeasor who allegedly caused the accident; and, three, the policy issued to Mitchell's mother under which Mitchell was covered as a resident relative. Before the court are the parties' motions for summary judgment. New Jersey law applies in this case. For the reasons that follow, the court will declare that Mitchell is not eligible for UIM benefits under the Providence Washington policy.

## I. UNCONTESTED FACTS

On May 3, 1999 Dante Mitchell was injured in Hamilton Township, New Jersey when the Ryder Truck in which he was a passenger was struck by a vehicle operated by Shaun Hibbs. At the time of the accident, Hibbs, the alleged tortfeasor, was insured under a policy with liability limits of $100,000 per person and $300,000 per accident [hereinafter "Colonial Penn policy"].[1]

Mitchell also sought UIM benefits under an insurance policy issued by Prudential General Insurance Company of New Jersey [hereinafter "Prudential policy"] to his mother, Gail Rhodes. The Prudential policy covers Mitchell as a resident relative, and provides UIM coverage of $15,000 per person and $30,000 per accident. Prudential refused to pay any UIM benefits to

---

1. Although the policy covers Hibbs, it is held by Cynthia Romano, the owner of the car that Hibbs was driving at the time of the accident. Mitchell seeks recovery for his injuries from both Romano and Hibbs in a thus far unresolved case in the New Jersey Superior Court.

Mitchell, however, because, according to Prudential, the Colonial Penn policy that insures the tortfeasor has liability policy limits greater than the UIM policy limits[2] of the Prudential policy, and, therefore, the tortfeasor is not an underinsured motorist with respect to Mitchell.

In a claim giving rise to the present action, Mitchell seeks UIM benefits under the Providence Washington policy that covered the Ryder truck in which he was a passenger at the time of the accident. The Providence Washington policy contains a New Jersey endorsement of uninsured and underinsured motorist coverage [hereinafter "Endorsement"], and has policy limits of $1 million per accident. Mitchell contends that, since the tortfeasor's liability policy limits are less the UIM limits of the Providence Washington policy, the tortfeasor is an underinsured motorist, and that, therefore, Providence Washington is obligated to pay Mitchell UIM benefits.

Providence Washington counters that, under the step down provision in the policy, because Mitchell is insured as a family member under his mother's policy, any determination of whether he was injured by an underinsured motorist and is therefore eligible for UIM benefits, hinges on a comparison of the Prudential UIM policy limits with the tortfeasor's liability policy limits. According to this argument, the UIM limits of the Providence Washington policy are irrelevant to this analysis. Therefore, like Prudential, Providence Washington contends that, since the liability limits under the alleged tortfeasor's policy are greater than the UIM limits under the resident relative policy, the tortfeasor is not an underinsured motorist, and refuses to pay Mitchell UIM benefits.

Mitchell filed a Petition to Appoint an Arbitrator in the Court of Common Pleas of Philadelphia County. Providence Washington removed to this court, and filed a counterclaim seeking a declaratory judgment that Mitchell is not entitled to UIM coverage under its policy.[3] The exact issue before the court is whether Mitchell may collect UIM coverage under the Providence Washington policy that insured the Ryder truck in which he was a passenger, notwithstanding that the UIM limits under the policy that insures him as a resident relative are less than the liability limits of the tortfeasor's policy.

## II. DISCUSSION

2. UIM insurance is a form of liability coverage that insures against a particular kind of risk, i.e., the risk that the purchaser of an insurance policy will be injured in an accident with a party who does not have adequate insurance. As such, UIM coverage differs from the liability coverage that an insured purchases to protect himself in the event that he is the tortfeasor in a particular accident, and thus liable for another's injuries. In this case, it is necessary to compare the amount of UIM coverage that was purchased for the injured plaintiff in this case to the amount of coverage that the tortfeasor purchased. For purposes of clarity and this opinion, the court will refer to the UIM limits of the injured party's policy as "UIM policy limits" or "UIM limits" and to the general liability limits of the tortfeasor's policy as "liability policy limits" or "liability limits."

3. In its counterclaim for declaratory judgment, Providence Washington sought that the court (1) dismiss Mitchell's petition to appoint an arbitrator on grounds that the existence of coverage disputes rendered the case improper for arbitration, (2) declare that Mitchell is limited in UIM benefits to those benefits provided in the Prudential policy under which he is considered a family member, (3) declare that Mitchell is not entitled to any UIM benefits from Providence Washington, (4) stay any claims or demands for UIM arbitration. Although this dispute originally centered around Mitchell's attempts to obtain an arbitration, at the summary judgment phase, the dispositive issue that has emerged is whether Mitchell is eligible for UIM benefits at all. As the parties concede, this particular issue is a coverage dispute that is both ripe and properly consigned to resolution by the court.

## A. UIM Coverage in New Jersey [4]

■ Under New Jersey law, every automobile insurance policy issued in New Jersey must provide policyholders with the option of purchasing UIM coverage, which is "optional first party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle whose liability insurance coverage is insufficient to pay for all losses suffered." *French v. N.J. Sch. Bd. Ass'n. Ins. Group*, 149 N.J. 478, 694 A.2d 1008, 1010 (1997) (citing N.J. Stat. Ann. 17:28–1.1e). The New Jersey legislature's purpose in requiring insurers to offer such coverage as an option is twofold: "to reduce the amount of claims against the Unsatisfied Claim and Judgment Fund ... [and] to protect persons injured in motor vehicle accidents from being unable to obtain compensation because their tortfeasors were uninsured, financially irresponsible drivers." *Tozzo v. Universal Underwriters Ins. Co.*, 261 N.J.Super. 586, 619 A.2d 639, 641 (1993).

■ Given these objectives, UIM coverage "creates a framework in which one can purchase as much UIM protection as is desired, given the purchaser's individual situation, that is, what coverage he or she can afford or desires." *French*, 694 A.2d at 1010. Its purpose is therefore, only "to protect the insured up to the UIM limits purchased and not to make [an] injured person whole again." *Bauter v. Hanover Ins. Co.*, 247 N.J.Super. 94, 588 A.2d 870, 872 (1991) (citing *Nikiper v. Motor Club of America Cos.*, 232 N.J.Super. 393, 557 A.2d 332 (1989)).

■ In order to be eligible for UIM coverage, the claimant must have been involved in an accident with an underinsured vehicle. *See* N.J. Stat. Ann. 17:28–1.1(e)(1) (" '[U]nderinsured motorist coverage' means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle."). The New Jersey statute provides that

**4.** Because this is a diversity case, the court must look to the conflict of laws rules of Pennsylvania, the forum state, to determine applicable substantive law. *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 150 (3d Cir. 2001). Under Pennsylvania law, the court must first ask whether the parties have chosen the relevant law, either explicitly or implicitly. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir.1999) (citing *Smith v. Commonwealth Nat'l Bank*, 384 Pa.Super. 65, 557 A.2d 775, 777 (1989) and Restatement (Second) Conflict of Laws § 187 (1971)).

There is no choice of law provision in either the Providence Washington policy or in its New Jersey Uninsured and Underinsured Motorist Endorsement, which applies because the Ryder truck involved in this accident was registered in New Jersey. Thus, there is no explicit choice of law provision in the contract. However, it is apparent that the parties intended for New Jersey law to govern. Under the Restatement (Second) Conflict of Laws, "a contract's references to the laws of a particular state may provide persuasive evidence that the parties intended for that state's law to apply." *Id.* at 165, 557 A.2d 775 (citing Restatement (Second) Conflict of Laws § 187 cmt. a). In this case, the caption of the endorsement, which contains the arbitration clause at issue in this case, is titled, in large capital letters, "NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE." The endorsement then states that it applies to covered autos "licensed or principally garaged in ... New Jersey." Moreover, the endorsement explicitly references New Jersey law, in particular the New Jersey Automobile Reparation Reform Act, in its "Exclusions" provision. In light of this evidence, the court concludes that the parties to the Providence Washington policy implicitly intended for New Jersey law to apply to provisions of this endorsement, and that an interest analysis to determine choice of law is therefore unnecessary.

[a] motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policy is available to a person against whom recovery is sought for bodily injury or property damages is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

*Id.* More simply stated, "[a] motor-vehicle tortfeasor is 'underinsured' only when all the liability coverage insuring his or her purportedly underinsured vehicle is *less than* the UIM benefits 'held' by the UIM claimant." *French,* 694 A.2d at 1010.

■■ In order to undertake this comparison, however, a court assessing an injured party's eligibility for UIM benefits must determine, as a threshold matter, what policies are "held" by the injured party. *Id.* at 1011. It is clear, of course, that a party holds any UIM policy "actually purchased by or purchased for the benefit of the prospective UIM claimant." *Id.* (citing *Aubrey v. Harleysville Ins. Cos.,* 140 N.J. 397, 658 A.2d 1246 (1995)). In other cases, typically when policies other than the one that the UIM claimant has purchased may also include the injured party in the ambit of their coverage, *see id.* at 1013, the court must look to "the probable fair expectations and common intent of an insurance company and policyholder, absent specifications to the contrary." *Id.* at 1017 (observing that "there will not be many cases that will not be covered by clear policy language").

To this end, a policy may contain a so-called "step down" provision, which addresses whether an insured "holds" a policy for purposes of the UIM statute. *See generally* Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law 416 (2003). A step down provision is triggered when "a claimant is entitled to UIM coverage either as a named insured or as a resident family member under another policy," and provides, in such a case, that "the limit of coverage available under either of those policies becomes the maximum limit even if the host vehicle UIM is higher ...." *Id.* Thus, the coverage available under the vehicle's insurance policy is modified to "step down" to the UIM claimant's own individual choice. *Id.* Therefore, under a step down provision, regardless of whether the injured party chooses to recover UIM benefits from his own insurer or from the insurer of the host vehicle, he may recover the same amount, i.e., the amount of coverage that was bargained for with the insurer that covered him either as a named insured or a family member.

In practical effect, the one maximum coverage limit that governs both policies also provides a single point of comparison from which one determines whether the tortfeasor in a particular accident was an underinsured motorist with respect to the insured. If the tortfeasor is not an underinsured motorist with respect to the policy that insures the injured party as a resident relative, i.e., if the tortfeasor's liability limits exceed those of the policy that insures the injured party as a resident relative, the tortfeasor is also not an underinsured motorist with respect to the policy that insures the injured party as a passenger.[5]

---

**5.** In fact, a 1996 standard insurance form on file with the New Jersey Department of Insurance explicitly provides for this possibility: [i]f a person is not a named insured under a UIM policy (as in the case of one who occupies the car of another), that occupant, although an insured under the policy of the host car, is not considered eligible for UIM coverage under the host's policy unless the limits of liability on the vehicle of the negligent operator are less than the limits of liability held by the occupant as a named insured, or as a spouse or family member under the policy of a named insured.

In this situation, the injured party is not eligible for UIM coverage under either of the policies that cover him, and may look only to the tortfeasor for his recovery.[6]

Step down provisions in insurance contracts are subject to the special rules of interpretation that govern insurance contracts. *See Bd. of Educ. of the Borough of Florham Park v. Utica Mut. Ins. Co.*, 172 N.J. 300, 798 A.2d 605, 610 (2002) (quoting *Fairlawn Indus., Ltd. v. Gerling Am. Ins. Co.*, 342 N.J.Super. 113, 775 A.2d 744 (2001)) (citing *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 582 A.2d 1257 (1990)) (describing insurance contracts as "contracts of adhesion"); *see also Rosario v. Haywood*, 351 N.J.Super. 521, 799 A.2d 32, 38 (2002) ("[I]nsurance policy exclusions require strict construction."). Under these special rules, "insurance policies should be construed to comport with the reasonable expectations of the insured." *Gibson v. Callaghan*, 158 N.J. 662, 730 A.2d 1278, 1283 (1999).

In interpreting the language of an insurance policy, the court must first "attribute to the words [of the policy] their plain and ordinary meaning," *Florham Park*, 798 A.2d at 610 (citing *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 775 A.2d 1262 (2001)), and, absent ambiguity, the court "should not write for the insured a better policy of insurance than the one purchased." *Gibson*, 730 A.2d at 1282.

Any ambiguity, however, must be resolved in favor of the insured. *Id.* (citing *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255 (1992)). A

*French*, 694 A.2d at 1016–17. The New Jersey Supreme Court has not found this to be an impermissible result. *See id.* at 1017 ("[A] passenger in the car of another would not be eligible for UIM benefits under the host's policy unless the tortfeasor's limits of liability were less than those under the passenger's personal policy.").

6. As a general principle, an insured who purchases UIM coverage as part of his regular insurance policy has chosen to protect himself up to a certain dollar amount against the possibility that he will be injured or suffer property damage in an accident caused by a motor vehicle where the liability insurance covering that other vehicle is insufficient to pay his full losses. Thus, an injured insured's eligibility for UIM benefits under his own policy typically turns upon a comparison between the limits of the insured's policy, and those of any tortfeasor. Based on this comparison, the insured may recover UIM benefits from his own insurer only if the tortfeasor's policy limits are less than his own.

A related but somewhat different situation is presented when a party injured in an accident is a passenger, or permissive occupant, in one of the vehicles involved. In this case, the passenger may be covered by his own vehicle insurance policy, or by the policy on the vehicle in which he was a passenger. Under these circumstances, insurance companies limit UIM benefits by including in their policy a "step down" provision, which provides, for example, that when the injured party is entitled to UIM coverage either as a named insured under his own auto policy or as a resident family member under another auto policy, the limit of coverage available under either of those policies becomes the maximum limit of UIM benefits that the passenger may recover, even if the host vehicle UIM limit is higher.

In practical effect, step down provisions sharply limit an injured passenger's ability to collect UIM benefits from the insurer of a vehicle in which he is a passenger when he already has insurance of his own. Even if the vehicle's policy limits exceed those of a tortfeasor in a particular accident, the passenger may not be eligible for UIM benefits, i.e., may not have been involved in an accident with an "underinsured motorist," under the vehicle's policy when the tortfeasor's policy limits exceed those of the policy that covers the passenger as a family member. In effect, therefore, a step down provisions holds the passenger to the amount of UIM coverage for which he originally bargained under his own policy, and does not allow him to reap any greater recovery as a result of having been fortuitously a passenger in a heavily insured vehicle at the time of the accident in which he was injured.

genuine ambiguity exists only "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage," *Rosario,* 799 A.2d at 38 (quoting *Lee v. Gen. Accident Ins. Co.,* 337 N.J.Super. 509, 767 A.2d 985 (2001)), and the court should consider "whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond reasonable question." *Gibson,* 730 A.2d at 1282. Therefore, the fact that litigants have suggested two conflicting interpretations, or that one party can offer a far-fetched interpretation of policy language, does not create ambiguity sufficient to prompt a court to resolve the issue in favor of the insured. *See Rosario,* 799 A.2d at 38.

■ Insurance policies must also be construed "to comport with the reasonable expectations of the insured." *Gibson,* 730 A.2d at 1283; *Rosario,* 799 A.2d at 38 (endorsing this rule "even if a close reading of the written text reveals a contrary meaning"). Thus, "[i]n exceptional circumstances, 'even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured.'" *Gibson,* 730 A.2d at 1283 (quoting *Werner Indus., Inc. v. First State Ins. Co.,* 112 N.J. 30, 548 A.2d 188 (1988) and citing Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv. L.Rev. 961, 967 (1970) ("The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.")).

With these principles in mind, the court turns to an examination of the Providence Washington policy, the step down provisions at issue in this case, and the reasonable expectations of the parties.

## B.   The Providence Washington Policy

■ The Providence Washington policy's New Jersey endorsement, states broadly that Providence Washington "will pay all sums the 'insured'[7] is legally entitled to recover as compensatory damages from the owner or driver of . . . an 'underinsured motor vehicle.'" Endorsement, ¶ A.1. Step down provisions throughout the policy, however, bear on the meaning, applicability, and scope of the UIM coverage available under the Providence Washington policy.

The relevant policy endorsement provides that when an "insured" is (1) "not the individual named insured under this policy or any other policy;" and (2) "insured as a 'family member' under one or more other policies providing similar coverage," an "underinsured motor vehicle" is "a land motor vehicle . . . to which a liability bond or policy applies at the time of an 'accident' but its limit for liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that 'insured' as a 'family member.'"[8]   *Id.* at ¶ F.5.b.

In this case, it is undisputed that Mitchell was not a named insured under the Providence Washington policy, and that he was insured as a family member under his mother's Prudential policy. Accordingly, for purposes of determining whether Mitchell was involved in an accident with an underinsured motorist, under the clear and unambiguous language of the Provi-

---

7.   In their uncontested statement of facts, the parties identified Mitchell as an "insured" under the Providence Washington policy.

8.   The endorsement defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household . . . ." Endorsement, ¶ F.2.

dence Washington policy, the applicable comparison is between the limits of the UIM policy that insures Mitchell as a family member and the liability limits of the policy covering the alleged tortfeasor in this case. Because the policy that insured Mitchell had UIM limits of $15,000 per person and $30,000 per accident, and the policy that insured the tortfeasor had liability limits of $100,000 per person and $300,000 per accident, the tortfeasor is not an underinsured motorist within the meaning of the Providence Washington policy. Providence Washington's policy limit of $1 million per accident is wholly irrelevant to this determination.

■ Mitchell attempts to argue that this provision in fact does not apply to him under the circumstances of this case. In particular, Mitchell argues that the Prudential policy did not provide him with "similar coverage"[9] to that afforded by the Providence Washington policy, because he is ineligible to receive UIM benefits from the Prudential policy under both the policy language and New Jersey law.[10] *See* N.J. Stat. Ann. 17:28–1.1(e)(1). Moreover, Mitchell argues that his mother's policy provides fundamentally dissimilar coverage from the Providence Washington poli-

cy, because it had a much lower liability limit. The court disagrees.

The dictionary meaning of the word "similar" is "[r]esembling, but not completely identical." Webster's II New Riverside University Dictionary (1988) 1085. Here, both the Providence Washington and Prudential policies explicitly provide UIM coverage, under appropriate circumstances. Moreover, because of Providence Washington's step down provision, they are required to pay UIM benefits under the same conditions, namely when the tortfeasor who injures their insured has lower liability policy limits than established in the Prudential policy. Thus, the UIM limits of both policies are actually one and the same. In fact, the only difference between the two policies is the manner in which they establish the maximum UIM coverage limit; Providence Washington steps down its level of coverage to that provided for by Prudential. Therefore, the court concludes that the Prudential policy affords Mitchell similar coverage, and he is subject to the definition of underinsured motorist set forth in Paragraph F.5.b.

■ Mitchell next contends that Paragraph E, which enumerates circumstances

---

**9.** Mitchell thus seeks to take advantage of the endorsement's catchall definitional provision that states that "with respect to any other 'insured' who is not described . . . above, 'underinsured motor vehicle' means a land motor vehicle . . . to which a liability bond or policy applies at the time of an 'accident' but its limit of liability is less than the Limit of Insurance for this Coverage." *Id.* at ¶ F.5.c.

**10.** Mitchell also argues that New Jersey's Deemer Statute imposes on Providence Washington, ostensibly as an out of state insurer, an obligation to pay Mitchell at least the statutory minimum coverage of $15,000 per person and $30,000 per accident in UIM benefits when he could not recover such benefits under his mother's policy. Under the Deemer Statute, vehicle insurers who do business in New Jersey but who sell insurance in any

other state must conform their out of state policies to offer at least the minimum level of UIM coverage required by New Jersey law. *See* N.J. Stat. Ann. 17:28–1.4. There are two problems with this argument. First, the Deemer Statute does not apply on its face, because the Providence Washington policy contained a New Jersey endorsement, and therefore could not be considered a policy issued "in any other state." *Id.* Second, the Providence Washington policy did not by its terms provide coverage at a level below the statutory minimum. Rather, Mitchell ultimately could recover no UIM benefits because, according to the definition of underinsured motorist offered by the policy and the New Jersey UIM statute, no underinsured motorist was involved in the accident that injured him.

that alter the availability of UIM benefits, entitles him to escape Providence Washington's step down provision. Paragraph E states in relevant part that "[i]f there is other applicable insurance available under one or more policies or provisions of coverage" and if an insured is "[i]nsured as a 'family member' under one or more policies providing similar coverage,"[11] rather than "an individual named insured under this or any other policy," an insured's recovery for damages for "may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage to that insured as a 'family member.'" *Id.* at ¶ E.1.a. Mitchell argues that because Prudential denied him family member coverage under the provisions of her policy, he had no applicable insurance "available" to him other than that potentially afforded by the Providence Washington policy. Accordingly, Mitchell asserts that he should not be held to the UIM limitations set forth in his mother's Prudential policy, and that he may recover on a primary basis from Providence Washington, regardless of the policy limits of his alleged tortfeasors and regardless of the policy limits of his mother's policy with Prudential. Again, the court does not agree.

Paragraph E's caption explicitly states that "[t]he Conditions are changed for Uninsured and Underinsured Motorists Coverage ...." Endorsement, ¶ E. Thus, before an assessment of the availability of other insurance is warranted, the court must determine whether the tortfeasor involved in the accident at issue is an underinsured motorist. Paragraph F's definitional provisions guide this inquiry, and ultimately act to bar recovery in Mitchell's case. As discussed in detail above, the tortfeasor could not be considered an un-

derinsured motorist with respect to Mitchell under Paragraph F.5.b., because the liability limits under the tortfeasor's policy were greater than the UIM limits applicable to Mitchell under his mother's policy. Accordingly, under the plain language of the Providence Washington policy, there is no underinsured motorist in this case to trigger the operation of Paragraph E.

Finally, given the clear language of the Providence Washington policy and the purposes of New Jersey's UIM statute, it cannot be said that this result fails to comport with the reasonable expectations of the insured. First, the language of the Providence Washington policy puts an insured on notice of the limits of his coverage, and of the possibility that holding another policy of insurance could either step down or eliminate the UIM coverage for which he is eligible under the Providence Washington policy. Second, New Jersey's UIM statute seeks to afford those purchasing insurance the option of purchasing as much coverage as they desire against accidents with underinsured motorists. In this context, an insured cannot reasonably expect to recover UIM benefits if, in fact, he was injured in an accident that did not involve an underinsured motorist. Nor can the insured reasonably expect to reap benefits in excess of those which he originally purchased on the basis of his own assessment of price of UIM coverage relative to the risk of an accident with an underinsured motorist.

## III.   CONCLUSION

For the foregoing reasons, the court concludes that Dante Mitchell is not entitled to underinsured motorist coverage under the Providence Washington policy. Accordingly, summary judgment will be

---

11. Apparently, at least for purposes of this argument, Mitchell concedes that his mother's policy in fact provides him with "similar

coverage" to that afforded by the Providence Washington policy.

granted in favor of Providence Washington and against Mitchell.

An appropriate order follows.

### ORDER

**AND NOW,** this **31st** day of **March, 2003,** it is hereby **ORDERED** that plaintiff's motion for summary judgment (doc. no. 12) is **DENIED,** and defendant's motion for summary judgment (doc. no. 13) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant's petition for leave of court to file a reply brief to plaintiff's answer to defendant's motion for summary judgment (doc. no. 17) is **DENIED as moot.**

**AND IT IS SO ORDERED.**

### JUDGMENT

**AND NOW,** this **31st** day of March, 2003, pursuant to an order dated March 31, 2003, it is hereby **ORDERED** that **JUDGMENT** is **ENTERED** in favor of defendant and against the plaintiff.

**AND IT IS SO ORDERED.**