767 A.2d 985 (2001)
Jim H. LEE, Plaintiff-Respondent,
v.
GENERAL ACCIDENT INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 2001.
Decided March 2, 2001.
*986 Scattergood and Hendershot, Mount Laurel, attorneys for appellant (Thomas J. Scattergood, on the brief).
Harold B. Shapiro, Vineland, attorney for respondent.
Before Judges BAIME, WALLACE, and LINTNER.
The opinion of the court was delivered by BAIME, P.J.A.D.
Plaintiff was injured when a motorcycle he was operating became involved in an accident with an automobile. After instituting suit against the other driver, plaintiff sought underinsured motorist benefits under a policy issued to April Jones by defendant General Accident Insurance Company. Plaintiff claimed that he qualified for such coverage because he was a "family member," which was defined by the policy as a person related to the insured by "blood, marriage or adoption." Although plaintiff and Lee had engaged in a marriage ceremony and had lived together as husband and wife, their marriage was void because they had not obtained a marriage license. The Law Division concluded that plaintiff was eligible for coverage by reason of the unlicensed marriage ceremony, and ordered defendant to participate in arbitration. Defendant appeals. We reverse.

I.
The salient facts are not in dispute. On February 22, 1995, Jones applied to defendant for automobile insurance. In the application, Jones listed her marital status as "single." Defendant issued a policy effective from February 27, 1995 to August 27, 1995[1]. The policy included underinsured motorist coverage.
On August 13, 1995, plaintiff was involved in an automobile accident while driving his motorcycle. Plaintiff was transported to a nearby hospital. Jones, who had been following plaintiff in her automobile, identified herself as plaintiff's wife to the police who appeared at the scene of the accident. The hospital admission sheet indicated that plaintiff was not married.
Three years later, plaintiff served a demand for underinsured motorist coverage. Upon obtaining a certification from the New Jersey Bureau of Vital Statistics verifying that plaintiff and Jones were not married during the policy period, defendant withdrew from arbitration. Plaintiff brought this action to compel defendant to participate in arbitration proceedings. The Law Division conducted an evidentiary hearing to determine plaintiff's marital status.
Jones testified that she and plaintiff began dating in 1988 and became cohabitants one year later. The two purchased a house together in 1993. The deed listed the grantees as "James H. Lee, Sr. and April Dawn Lee, his wife." However, Jones could not produce identification indicating her last name was Lee. The deed was amended to list as the grantees "James H. Lee, Sr. and April D. Jones, n/k/a April Dawn Lee, his wife."
*987 In June 1993, plaintiff and Jones applied for a marriage license. Pursuant to the statutory requirements in force at the time, the two underwent blood tests. However, they were refused a marriage license because the blood tests were dated thirty-two days before the date of application, contrary to the statutory time limit. They nevertheless participated in a marriage ceremony on July 18, 1993. When the minister requested the marriage license, he was told that there was a problem with the "paperwork" and that they would provide him with the necessary documents when they received them. Based upon that representation, the minister issued a marriage certificate.[2]
In finding that plaintiff was related to Jones by marriage, the judge emphasized that the couple lived together as husband and wife and participated in a marriage ceremony. While recognizing that the marriage was void because of the couple's failure to obtain a marriage license, the judge construed the policy language liberally and determined that plaintiff was Jones' spouse at the time of the accident.

II.
New Jersey courts have consistently recognized that insurance policies are contracts of adhesion and are subject to special rules of interpretation. Longobardi v. Chubb Ins. Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990); Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 611, 503 A.2d 862 (1986); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). Policies should be construed liberally in the insured's favor to the end that coverage is afforded to the fullest extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. at 482, 170 A.2d 22. In construing an insurance policy, we must "ensur[e][its] conformity to public policy and principles of fairness." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992).
Conversely, in the absence of an ambiguity, we "should not write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989). When the terms of an insurance contract are clear, we are to enforce it as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960). We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). In that instance, the policy should be construed to comport with the insured's objectively reasonable expectations of coverage. Gibson v. Callaghan, 158 N.J. 662, 671, 730 A.2d 1278 (1999); American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998); Di Orio v. New Jersey Mfrs. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979).
Against that backdrop, the question presented is whether plaintiff and Lee were related by marriage within the terms of the insurance policy. We perceive no ambiguity in the policy language. The commonplace meaning of marriage envisions a man and a woman lawfully joined in wedlock. Lopez v. Santiago, 125 N.J.Super. 268, 270, 310 A.2d 500 (App. Div.1973); cf. Crowe v. De Gioia, 90 N.J. 126, 132, 447 A.2d 173 (1982) (alimony is inapplicable to unmarried cohabitants); Kozlowski v. Kozlowski, 80 N.J. 378, 383, 403 A.2d 902 (1979) (same). While the issue raised is one of contractual interpretation, not statutory construction, we think it reasonable to look to New Jersey laws *988 dealing with marriage to determine what type of relationship was intended to be embraced by the insuring agreement.
The necessity of obtaining a license as a prerequisite to marriage admits of no doubt. N.J.S.A. 37:1-10 provides:
[N]o marriage contracted on or after December first, nineteen hundred and thirty-nine, shall be valid unless the contracting parties shall have obtained a marriage license as required by section 37:1-2 of this Title, and unless, also, the marriage, after license duly issued therefor, shall have been performed by or before any person, religious society, institution or organization authorized by section 37:1-13 of this Title to solemnize marriages....
N.J.S.A. 37:1-2 states, "[b]efore a marriage can be lawfully performed in this state, the persons intending to be married shall obtain a marriage license from the licensing officer and deliver it to the person who is to officiate...." Bolstering these provisions is N.J.S.A. 37:1-15, which makes it a crime for someone to "solemnize a marriage without the presentation of a license...." Our Supreme Court has said that to recognize "mere cohabitation" as marriage "would run counter to the policy of [these] statute[s]" even in cases where a ceremonial wedding was conducted. Dacunzo v. Edgye, 19 N.J. 443, 450, 117 A.2d 508 (1955).
The ambiguity lies not in the policy language, but rather in the relationship between plaintiff and Jones. In a long line of decisions, we have declined to recognize cohabitation as marriage in determining the coverage afforded by automobile insurance. See, e.g., Shuman v. Market Transition Facility, 294 N.J.Super. 193, 196, 682 A.2d 1225 (App.Div.1996); Handler v. State Farm Mut. Auto. Ins. Co., 253 N.J.Super. 641, 647, 602 A.2d 796 (App. Div.1992); State Farm Mutual Auto. Ins. Co. v. Pizzi, 208 N.J.Super. 152, 156, 505 A.2d 160 (App.Div.1986); Wood v. State Farm Mutual Auto. Ins. Co., 178 N.J.Super. 607, 609, 429 A.2d 1082 (App.Div. 1981); Lopez v. Santiago, 125 N.J.Super. 268, 270, 310 A.2d 500 (App.Div.1973); see also Sypien v. State Farm Mutual Auto. Ins. Co., 111 Ill.App.3d 19, 66 Ill.Dec. 780, 443 N.E.2d 706 (Ill.App.Ct.1982); Menchaca v. Farmers Insurance Exchange, 59 Cal.App.3d 117, 130 Cal.Rptr. 607 (Cal.Ct. App.1976); Harleysville Mutual Casualty Ins. Co. v. Carroll, 50 Del. 67, 123 A.2d 128 (Del.Super.Ct.1956). Shuman v. Market Transition Facility, 294 N.J.Super. 193, 682 A.2d 1225, is illustrative of this principle. The plaintiff was involved in an automobile accident while a passenger in an uninsured vehicle. At the time of the accident, the plaintiff and the insured were unmarried cohabitants, having held themselves out as husband and wife and having three children together. The plaintiff sought personal injury protection and uninsured motorist benefits under the insured's policy. We held that "an unmarried cohabitant is not a member of the insured's family...." Id. at 195, 682 A.2d 1225.
A similar result was reached in State Farm Mutual Auto. Ins. Co. v. Pizzi, 208 N.J.Super. 152, 505 A.2d 160. The plaintiff sustained injuries while riding a bicycle that was struck by a "hit and run" motorist. She sued for uninsured motorist benefits claiming that she was a "relative" of the named insured, because the couple had long resided together and had held themselves out as husband and wife. In rejecting that argument, we stressed that no reported New Jersey opinion has "call[ed] a cohabitant a `spouse' or `relative.'" Id. at 162, 505 A.2d 160.
In Wood v. State Farm Mut. Ins. Co., 178 N.J.Super. 607, 429 A.2d 1082, the plaintiff sought personal injury protection benefits for injuries sustained when an automobile struck his motorcycle. The plaintiff had resided with the insured for a lengthy period and claimed to be a member of the insured's family. We held that people who live together, while not married, will not be deemed to be family members or relatives for insurance coverage purposes "no matter how close and intimate *989 that friendship might be." Id. at 609, 429 A.2d 1082.
We deem these cases controlling. The fact that plaintiff and Jones participated in a ceremonial wedding adds nothing to the case. Under our statutes, the wedding was meaningless. The marriage was void from its inception. N.J.S.A. 37:1-10. The parties implicitly acknowledged that fact in their post-wedding ceremony behavior. In her automobile insurance applications, Jones claimed to be unmarried. So too, the hospital report listed plaintiff as an unmarried male. This is not a case in which one or both parties in good faith believe they are married. See Dawson v. Hatfield Wire & Cable Co., 59 N.J. 190, 196, 280 A.2d 173 (1971). Nor are we concerned here with a form of marriage or partnership which, for better or worse, is not recognized by New Jersey statutes. See Rutgers Council of AAUP v. Rutgers, 298 N.J.Super. 442, 463, 689 A.2d 828 (App.Div.1997) (Baime, J.A.D., concurring) (statutes do not recognize homosexual marriages). At all relevant times, plaintiff and Jones were aware of the fact that they were not legally married. They might have thought of themselves as husband and wife, but defendant was not party to their relationship and was not bound by their mutual but hidden understanding.
We, of course, assign no blame or moral opprobrium. We nevertheless believe that a brightline rule best serves the interests of justice. Ceremonial marriages carry with them varying degrees of solemnity, publicity and prior deliberation. The courts should not be placed in a position of having to pick and choose which forms of relationships are to be recognized as having the elements of marriage, and which do not. We thus adhere to the principle long recognized in New Jersey limiting insurance coverage to marriages that satisfy the legal requisites of our statutes.
Reversed.
NOTES
[1] After the accident, Jones made two changes to her insurance policy. On October 20, 1995, Jones added another automobile but did not inform defendant of any change in her marital status. On April 22, 1996, Jones listed plaintiff as an additional insured, indicating that he was unmarried, and characterizing their relationship as "friend."
[2] Although plaintiff and Jones continued to reside together after the accident and had a child, they did not cure the defect in their marital status until 1998, when they learned that blood tests were no longer required to obtain a marriage license. Plaintiff explained that he was "deathly afraid" of needles. Plaintiff and Jones obtained a marriage license in 1998 and presented it to the minister who had conducted the wedding ceremony.