NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2620-15T3

WILLIAM SLOAN,

 Plaintiff-Appellant,

v.

CHERYL SLOAN,

 Defendant-Respondent.
________________________________

 Submitted March 27, 2017 – Decided April 6, 2017

 Before Judges Sabatino and Haas.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Camden County,
 Docket No. FM-04-1170-12.

 Daniel K. Newman, attorney for appellant.

 Michael A. Diamond, attorney for respondent.

PER CURIAM

 In this post-judgment matrimonial matter, plaintiff William

Sloan appeals from the Family Part's January 22, 2016 order

terminating plaintiff Cheryl Sloan's obligation to continue to pay

him alimony. We reverse and remand for further proceedings.
 The parties were married in June 1990 and divorced in June

2014. They have two children.

 Pursuant to the parties' Matrimonial Settlement Agreement

("MSA"), which the trial court incorporated into the Final Judgment

of Divorce, defendant was required to pay plaintiff $400 per month

in permanent alimony beginning on April 1, 2015. In pertinent

part, Paragraph 15 of the MSA further provided:

 For purposes of this [a]greement, the term
 "permanent" alimony shall be governed by
 existing New Jersey statutory and decisional
 law as of December 17, 2013, the date the
 parties appeared before . . . the Superior
 Court of New Jersey, Chancery Division-Family
 Part, Camden County. [Defendant] will be
 released from her obligation to pay alimony
 to the [plaintiff] upon satisfaction of the
 "permanency" aspect of this obligation, at
 which time she will be released from the
 obligation thereof, or upon the death of
 [plaintiff] or his remarriage.

 On October 24, 2015, plaintiff and his girlfriend, I.G.,1

participated in what they called a "civil commitment ceremony." 2

Plaintiff and I.G. did not obtain a marriage license prior to this

ceremony. I.G. arranged for an officiant to conduct the ceremony

and told the officiant in an e-mail that she and plaintiff were

1
 Because this individual is not a party to this litigation, we
use initials to identify her in order to protect her privacy.
2
 The couple sent invitations to their family and friends inviting
them to "share in their Celebration of Love at their Commitment
Ceremony."

 2 A-2620-15T3
"NOT getting married via a marriage license. We want to be married

under the eyes of God." The officiant provided a certification

stating that she did not "marry" plaintiff and I.G. on October 24,

2015 and that she did not "see, receive, handle, transmit, sign

or deliver any marriage license for the commitment ceremony

between" plaintiff and I.G.

 Nevertheless, both plaintiff and I.G. made postings on social

media accounts stating that they were getting married. For

example, plaintiff posted on September 3, 2015 that he was

"marrying my best friend[,] [I.G.]" Plaintiff also announced his

"engagement" to I.G. in a wedding magazine.

 During the commitment ceremony, plaintiff and I.G. referred

to each other as "husband" and "wife." At the end of the ceremony,

the officiant stated, "I now pronounce you to be husband and wife.

You may kiss your bride." In a subsequent internet post, I.G.

referred to sharing a meal with plaintiff at a seafood restaurant

by stating that she was having dinner with her "husband."

 Upon learning of the ceremony, defendant filed a motion asking

that her alimony obligation be terminated under Paragraph 15 of

the MSA because plaintiff had remarried. Plaintiff opposed

defendant's application and asserted that because he and I.G.

never obtained a marriage license, he had not remarried within the

intendment of Paragraph 15.

 3 A-2620-15T3
 Following oral argument on January 22, 2016, the trial judge

granted defendant's motion to terminate her alimony obligation.

In a very brief oral decision, the judge acknowledged that

plaintiff and I.G. were not legally married. However, even though

testimony was not taken from the parties and I.G. at a plenary

hearing, the judge concluded that plaintiff and I.G. had

 done everything to be married except for issue
 the certificate [sic] in an attempt to avoid
 losing alimony, and I find that to be
 intentional. And I don't think that's
 equitable and I don't think that that's fair.
 . . . I don't have a marriage whatsoever. But
 I have someone taking all the steps there are
 to be a married couple just to solely twist
 or abuse the language, what a "marriage" is.
 And that I'm not going to permit in my
 courtroom.

 This appeal followed.

 On appeal, plaintiff asserts that Paragraph 15 of the MSA

only permitted defendant's alimony obligation to be terminated

upon his remarriage. Because he and I.G. never obtained a marriage

certificate, plaintiff contends that they were not legally married

and, therefore, the judge erred by terminating alimony based on

his participation in the commitment ceremony. We agree.

 The scope of our review of the Family Part's orders is

limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe

substantial deference to the Family Part's findings of fact because

of that court's special expertise in family matters. Id. at 413.

 4 A-2620-15T3
However, findings by a trial court are only "binding on appeal

when supported by adequate, substantial, credible evidence." Id.

at 412-13. Moreover, we owe no deference to the trial judge's

legal conclusions, which we review de novo. Manalapan Realty,

L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

 Here, the trial judge did not engage a detailed analysis of

Paragraph 15 of the MSA. On its face, however, defendant's alimony

obligation could only be terminated under the provision upon

plaintiff's "death or his remarriage."

 With regard to the question of whether plaintiff and I.G.

"married" each other at the commitment ceremony, N.J.S.A. 37:1-10

clearly provides:

 [N]o marriage contracted on and after December
 [1, 1939], shall be valid unless the
 contracting parties shall have obtained a
 marriage license as required by [N.J.S.A.]
 37:1-2 . . . , and unless, also, the marriage,
 after license duly issued therefor, shall have
 been performed by or before any person,
 religious society, institution or
 organization authorized by [N.J.S.A.] 37:1-13
 . . . to solemnize marriages; and failure in
 any case to comply with both prerequisites
 aforesaid which shall always be construed as
 mandatory and not merely directory, shall
 render the purported marriage absolutely void.

 [(emphasis added).]

As our former colleague Judge Mary Catherine Cuff observed in

Yaghoubinejad v. Haghighi, N.J.S.A. 37:1-10 "accomplishes three

 5 A-2620-15T3
things. First, it abolishes common law marriage. Second, it

requires that a license to marry be procured before the ceremony.

Third, it requires that the marriage be solemnized by an authorized

person or entity." Yaghoubinejad v. Haghighi, 384 N.J. Super.

339, 341 (App. Div. 2006).

 Here, there is nothing in the record to indicate that

plaintiff and I.G. ever obtained the marriage license required by

N.J.S.A. 37:1-2 and N.J.S.A. 37:1-10 to make what occurred at the

"commitment ceremony" a lawful marriage. Both plaintiff and the

officiant certified that the couple did not have a marriage

license; the officiant stated that she never "married" plaintiff

and I.G.; and I.G. advised the officiant that she and plaintiff

only wanted to be "married under the eyes of God."

 The fact that plaintiff and I.G. participated in a ceremony

where they referred to each other as husband and wife, and where

the officiant declared them to be husband and wife at the

conclusion of the ceremony is of no moment. In Lee v. Gen. Acc.

Ins. Co., 337 N.J. Super. 509, 512 (App. Div. 2001), the plaintiff

and his girlfriend, Jones, applied for a marriage license, but the

license was denied because they did not obtain a timely blood

test. They nevertheless participated in a marriage ceremony

presided over by a member of the clergy and then lived together

in a house they jointly purchased. Ibid.

 6 A-2620-15T3
 Thereafter, Jones obtained an automobile insurance policy and

listed her marital status as "single." Id. at 511. About six

months later, the plaintiff was injured in an accident and later

filed a claim under Jones's policy for uninsured motorist benefits.

Id. at 512. However, these benefits were only available to a

"'family member,' which was defined by the policy as a person

related to the insured by 'blood, marriage, or adoption.'" Id.

at 511.

 In Lee, we held that because the plaintiff and Jones never

obtained a marriage license as required by N.J.S.A. 37:1-10, they

were not legally married and, therefore, the plaintiff was not

eligible for coverage as a "family member" under Jones's policy.

Id. at 514. In commenting upon the plaintiff and Jones's

participation in a ceremonial wedding, we noted that that event

"add[ed] nothing to the case [because] [u]nder our statutes, the

wedding was meaningless[,] [and] [t]he marriage was void from its

inception." Id. at 516 (citing N.J.S.A. 37:1-10). We also stated:

 We . . . believe that a brightline rule best
 serves the interests of justice. Ceremonial
 marriages carry with them varying degrees of
 solemnity, publicity and prior deliberation.
 The courts should not be placed in a position
 of having to pick and choose which forms of
 relationships are to be recognized as having
 the elements of marriage, and which do not.

 [Ibid.]

 7 A-2620-15T3
 Applying these principles to the present case, we are

constrained to reverse the trial judge's conclusion that

plaintiff's and I.G.'s participation in the "commitment ceremony"

and their prior and subsequent statements that they were married

were tantamount to a "marriage" under Paragraph 15 of the MSA.

Because the judge did not conduct an evidentiary hearing, there

is nothing in the record to indicate that the parties intended the

term "marriage" in the MSA to refer to anything other than a lawful

marriage conducted under the authority of a validly-issued

marriage license as required by N.J.S.A. 37:1-2 and N.J.S.A. 37:1-

10. Thus, because plaintiff and I.G. are not legally married, the

judge mistakenly terminated defendant's alimony obligation under

Paragraph 15.

 However, although we have concluded that the trial judge

should not have terminated defendant's alimony obligation, nothing

prevented the court from considering whether defendant's

obligation should have been modified because plaintiff was now

cohabiting with I.G. As noted above, Paragraph 15 provided that

defendant's alimony obligation would continue until plaintiff's

death or remarriage. Thus, this provision did not compel

termination of defendant's payments upon cohabitation by

plaintiff. Nevertheless, the parties did not include a specific

"anti-Lepis" provision in their MSA barring defendant's support

 8 A-2620-15T3
obligation from being modified, rather than terminated, if by

cohabiting with another, plaintiff's economic needs changed.

 It is well established that absent an agreement specifying

to the contrary, cohabitation by a party may constitute a changed

circumstance warranting a modification of alimony when it is

coupled with a change in the recipient's economic needs and

circumstances. Lepis v. Lepis, 83 N.J. 139, 151 (1980). If the

payor spouse can prove cohabitation of the dependent spouse, the

payor can seek a reduction in alimony by showing either that the

dependent spouse's economic needs have decreased due to the

financial assistance of another or by showing that the payor's

alimony payments are subsidizing the third-party cohabitant.

Boardman v. Boardman, 314 N.J. Super. 340, 347 (App. Div. 1998).

 Here, it appears from the record that although they are not

legally married, plaintiff and I.G. are living together. However,

because the parties did not exchange financial information or

engage in other discovery, the record does not disclose the extent

to which plaintiff's and I.G.'s finances are intertwined or whether

they share expenses.

 Under these unique circumstances, we remand this matter to

the trial court to consider whether a modification of alimony is

appropriate due to changed circumstances. We suggest that the

court hold a prompt case management conference with the parties

 9 A-2620-15T3
as soon as practical to determine what discovery is needed, the

timetable for completing same, and whether a plenary hearing is

necessary to resolve any disputed facts or questions of contract

interpretation of the MSA.

 The remand proceedings, including the conduct of any plenary

hearing, should be completed with the issuance of a decision within

120 days of the date of this opinion. Pending the completion of

the remand, and subject to a possible retroactive adjustment for

arrears should the court order that alimony be reinstated at the

original or reduced amount, defendant's alimony obligation to

plaintiff shall remain suspended.

 Finally, we note that before the trial court, neither party

argued that the judge should have applied the new provisions of

N.J.S.A. 2A:34-23 in this case. On September 10, 2014, the

Legislature adopted amendments to "N.J.S.A. 2A:34-23, designed to

more clearly quantify considerations examined when faced with a

request to establish or modify alimony." Spangenberg v.

Kolakowski, 442 N.J. Super. 529, 536-37 (App. Div. 2015) (holding

that the Legislature did not intend that these amendments be

applied retroactively to orders specifying the duration of alimony

or incorporating agreed-upon terms of alimony). One of the

amendments permits a trial court to suspend or terminate alimony

upon proof that the dependent spouse is cohabiting with another

 10 A-2620-15T3
individual, even if the dependent spouse's economic need has not

been affected. N.J.S.A. 2A:34-23(n). Because the parties did not

address the applicability of this amendment to the question of

whether defendant's alimony obligation should be modified due to

plaintiff's cohabitation with I.G., they should have the

opportunity to do so on remand.

 Reversed and remanded. We do not retain jurisdiction.

 11 A-2620-15T3