**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2686-16T3

IN THE MATTER OF THE ESTATE
OF CAROL A. LEE RANKINS,

    Deceased.

_____

Argued February 6, 2018 — Decided June 25, 2018

Before Judges Sumners and Moynihan.

On appeal from Superior Court of New Jersey,
Chancery Division, Probate Part, Middlesex
County, Docket No. 250686.

Kenneth W. Thomas argued the cause for
appellant Ursula T. Jones (Lanza Law Firm,
LLP, attorneys; Kenneth W. Thomas, of counsel
and on the brief).

Dawn Marie Farinella argued the cause for
respondent Clyde Rankins (Santoro and Santoro,
attorneys; Dawn Marie Farinella, of counsel
and on the brief).

PER CURIAM

    In this Chancery Division dispute, respondent Clyde Rankins,

the surviving spouse of Carol A. Lee Rankins, claimed full

entitlement to the proceeds from the sale of the home they owned

and lived in through tenancy by the entirety. Appellant Ursula

T. Jones, Carol's[1] daughter from a different relationship and executrix of Carol's estate, argued that Clyde has no rights to her mother's one-half share of the proceeds because Carol and Clyde's twenty-seven year marriage is invalid based upon her discovery after her mother's death that her signature as a witness on their marriage certificate was forged. Ursula therefore asserted that Carol's last will and testament controls the disposition of her one-half share of the sales proceeds, which should be placed in a constructive trust for the beneficiaries — she and her two sisters are the sole beneficiaries — due to Clyde's misdeeds.[2]

After the parties filed summary judgment motions, the trial court granted Clyde's motion and denied Ursula's motion. In its oral decision, the court determined that there was no basis to nullify his marriage with Carol under either our annulment statute, N.J.S.A. 2A:34-1, or due to Ursula's alleged forged signature on the marriage certificate, and thus he was entitled to all of the sale proceeds as a surviving tenant by the entirety. We reverse because we conclude Ursula's contention that her signature was

---

[1] We use the parties' first names because some of them share a surname and for ease of reference, and in doing so we mean no disrespect.

[2] The youngest sister is a minor who was adopted by Carol and Clyde, but whose legal guardian is Ursula.

forged creates a factual dispute as to the consummation of their marriage under N.J.S.A. 37:1-17, which thereby prevents summary judgment in favor of Clyde to the sales proceeds under tenancy by the entirety. There is also a factual dispute concerning Clyde's misdeeds, which warrants a reversal of the court's decision not to consider whether a constructive trust should be imposed.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citations omitted). Summary judgment should be denied when determination of material disputed facts depends primarily on credibility evaluations. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011). Although both parties moved for summary judgment, but because the court granted judgment in favor of Clyde, we consider the facts in a light most favorable to Ursula. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Mindful of these principles, we briefly summarize the relevant facts and assertions from the record. Eight months after

Carol's death in 2015, Ursula, the executrix of Carol's estate under a last will and testament executed on April 1, 2013, filed a verified complaint and order to show cause to probate the estate and vacate the letters of administration previously given to Clyde. In pertinent part, she specifically requested to enjoin and restrain Clyde, who married Carol in a civil ceremony on June 10, 1988, "from dissipating any portion of the [estate] until further notice of the court." Clyde responded with an answer and counterclaim; seeking all rights to title and interest in the marital home,[3] which was jointly purchased a year before their marriage and deeded to Carol, but she later deeded the property to herself and Clyde, her husband, that was recorded in the Middlesex County Clerk's Office on July 1, 1998.[4] Carol claims she assisted her mother in the purchase, which was made solely with her mother's funds. Clyde also claimed no knowledge of his wife's will nor the bequests therein.

In Ursula's answer to the counterclaim, she questioned her mother's marriage to Clyde because she did not witness the marriage

_____

[3] Although Ursula contends Carol and Clyde were not legally married, for ease of reference we refer to the property as their marital home.

[4] A mortgage on the property was recorded on June 1, 2007, with "Clyde S. Rankins and Carol A. Rankins, Husband and Wife" as the borrowers.

A-2686-16T3

and her signature on the marriage certificate was forged. The court in turn executed an order admitting the will to probate; enjoining Clyde from dissipating any portion of the estate until further court order; appointing Ursula as executrix of the estate; vacating the letters of administration granted to Clyde; allowing Clyde to sell the marital home with the net proceeds to be held in the trust account of Clyde's attorney; setting out a discovery period; requiring parties to participate in mediation; and scheduling a trial date.

After mediation was unsuccessful, Ursula filed a motion to amend her complaint to allege unjust enrichment and seek imposition of a constructive trust on one-half of the proceeds of the marital home. Clyde filed no opposition. However, the record does not indicate the disposition of the motion. Ursula then filed a summary judgment motion to impose a constructive trust on one-half of the proceeds of the marital home on behalf of her and her sisters as beneficiates of Carol's estate. In the application, she certified that her sister, Catherine, signed her name on the marriage certification as she was not at the wedding and was against her mother's decision to marry Clyde. Ursula also made various allegations concerning Clyde's emotional control over her mother by forcing her to add his name to the deed of the marital home; his physical and sexual abuse towards her mother; his sexual

abuse of her female cousin, her adopted sister's mother; his lack of concern and financial support for her adopted sister, his adopted daughter; and his mismanagement of her mother's finances that led her mother to file for bankruptcy and suffer stress that caused health issues. Ursula further contended that these circumstances attributed to her mother's decision not to leave anything to Clyde in her last will and testament. Clyde filed a cross-motion for summary judgment supported by his certification that he and Carol were legally married, and that he had no knowledge of Ursula's sister signing her signature on the marriage certificate.

The court rejected Ursula's claim that the marriage was not valid, finding there was no basis to annul the marriage under N.J.S.A. 2A:34-1, which allows marriages to be nullified on a variety of grounds, including bigamy, incest, impotence, infancy, and incapacity to marry. We agree with this finding.

We, however, differ with the court's rejection of Ursula's contention that the marriage was not legally valid because it failed to satisfy the marriage certificate requirements of N.J.S.A. 37:1-17. In pertinent part, the statute provides, "[e]ach certificate of marriage or civil union shall also contain the signature and residence of at least two witnesses who were present at the marriage or civil union ceremony." N.J.S.A. 37:1-17. The

court determined there was no legal basis to invalidate Carol and Clyde's marriage due to a lack of two bona fide witnesses on the marriage certificate as required by N.J.S.A. 37:1-17. Even though the statute does not specifically declare that failure to adhere to its requirements invalidates a purported marriage, there is a legal basis to support Ursula's contention.

In N.J.S.A. 37:1-10, our legislature declared that effective December 1, 1939:

> [N]o marriage . . . shall be valid unless the contracting parties shall have obtained a marriage license as required by [N.J.S.A.] 37:1-2 . . ., and unless, also, the marriage, after license duly issued therefor, shall have been performed by or before any person, religious society, institution or organization authorized by [N.J.S.A.] 37:1-13 . . . to solemnize marriages; and <u>failure in any case to comply with both prerequisites aforesaid, which shall always be construed as mandatory and not merely directory, shall render the purported marriage absolutely void</u>.
>
> [(Emphasis added).]

Thus, as we recognized in <u>Yaghoubinejad v. Haghighi</u>, 384 N.J. Super. 339, 341 (App. Div. 2006), N.J.S.A. 37:1-10, among other things, "requires that a license to marry be procured before the ceremony." Significantly, in <u>Lee v. Gen. Accident Ins. Co.</u>, 337 N.J. Super. 509, 514-16 (App. Div. 2001), we held that because a couple never obtained a marriage license as required by N.J.S.A. 37:1-10, they were not legally married and, therefore, the

plaintiff was not eligible for coverage as a "family member" under her spouse's automobile policy. In commenting upon the couple's participation in a ceremonial wedding, we noted the event "add[ed] nothing to the case [because] [u]nder our statutes, the wedding was meaningless[,] [and] [t]he marriage was void from its inception." Id. at 516 (citing N.J.S.A. 37:1-10).

Applying these principles to this appeal, a marriage certificate that contains a forged signature of one of its two purported witnesses does not satisfy N.J.S.A. 37:1-10, and is thus, invalid. In turn, the marriage license cannot be lawful and the marriage is not legally consummated. Hence, we are constrained to reverse the court's legal conclusion that Ursula's contention that her forged signature on Carol and Clyde's marriage certificate did not invalidate their marriage. Since Clyde disputes Ursula's forgery assertion, the court should not have granted summary judgment to either party. A remand for trial is therefore necessary to enable Ursula to prove the veracity of her allegations and its impact on Clyde's interest in the marital home.

In addition, we find fault with the court's dismissal of Ursula's equitable argument that a constructive trust should be imposed on her mother's one-half share of the sales proceeds because under the operation of law — tenancy by the entirety — her mother's joint interest in the property went to Clyde. In reaching

that decision, the court explained there was no property to place a constructive trust upon due to its finding that Carol and Clyde were in fact married, giving Clyde the sole right to the sales proceeds of the marital home as a tenant by the entirety. However, as noted, we conclude there is a legitimate question as to whether they were legally married. Moreover, even if the marriage was legally consummated, the court failed to adequately address if there were sufficient grounds to impose a constructive trust due to Clyde's alleged misdeeds.

A constructive trust on property is appropriate in order to "prevent unjust enrichment and force a restitution to the plaintiff of something that in equity and good conscience [does] not belong to the defendant." Flanigan v. Munson, 175 N.J. 597, 608 (2003) (alteration in original) (citation omitted). A two-prong test, however, must be satisfied to impose a constructive trust. Ibid. A court must first find one of the parties has committed a "wrongful act." Ibid. (citation omitted). Second, the "wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient." Ibid.

After stating that the sales proceeds go to Clyde under tenancy by the entirety, the court simply states: "The other arguments that are set forth do not form a basis under the law to impose a constructive trust." Because the court did not

specifically address how it considered Ursula's allegations of Clyde's misdeeds, it is unclear whether the court made credibility determinations and found them unconvincing, or if the court accepted them as true, they did not warrant an imposition of a constructive trust. And of course, if the court took the former route by deciding a factual dispute, it should not have done so. See Petersen, 418 N.J. Super. at 132. On remand, the court must clearly set forth it findings of law and facts to determine whether imposition of a constructive trust is warranted. See R. 1:7-4; Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015).

Finally, the record indicates that the respective summary judgment motions were filed and decided before any discovery commenced. Thus, on remand, we leave it to the court's discretion to determine if discovery should be permitted.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2686-16T3