**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2328-17T3

EVANSTON INSURANCE
COMPANY,

 Plaintiff-Respondent,

v.

A&R HOMES DEVELOPMENT,
LLC, JOSE APONTE, ENNOBLE
REACH MANAGEMENT
CORPORATION, KUEI MEI
and TSENG, and LIEN YI TSENG,

 Defendants,

and

DAVID SHARKEY,

 Defendant-Appellant.

_____

Argued February 5, 2019 – Decided February 19, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4547-16.

Francis X. Garrity argued the cause for appellant (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Jane Garrity Glass, of counsel; Francis X. Garrity, on the briefs).

April T. Villaverde argued the cause for respondent (Kennedys CMK LLP, attorneys; April T. Villaverde, of counsel and on the brief).

PER CURIAM

In this insurance coverage dispute, defendant David Sharkey appeals from a December 15, 2017 Law Division order granting plaintiff Evanston Insurance Company (Evanston) summary judgment, and a December 15, 2017 order denying his cross-motion for summary judgment.[1] We affirm the court's orders on two independent bases.

First, we conclude that Sharkey was bound by the court's October 13, 2017 default judgment, in which the court concluded that Evanston "owe[d] no coverage obligation" to defendants, A&R Homes Development, LLC (A&R), and its owner, Jose Aponte, for any claims asserted by Sharkey. Second, we agree with the court that the comprehensive general liability (CGL) policy issued by Evanston did not provide coverage for Sharkey's third-party bodily injury claim, in any event.

---

[1] It appears the court mistakenly referred to Sharkey as "[p]laintiff" in its December 15, 2017 order denying his cross-motion.

A-2328-17T3

I.

In June 2015, A&R, a general contractor, was hired by defendants Kuei Mei Tseng and Lien Yi Tseng to build a four story, three-unit apartment building with a rear parking lot on their property in Jersey City. A&R subsequently retained YVPV Construction, LLC, (YVPV) as a subcontractor for the project. On March 23, 2016, Sharkey, an employee of YVPV, was working at the construction site when he fell approximately twenty feet and sustained bodily injuries. Sharkey filed a complaint on May 4, 2016, against the Tsengs, A&R, Jose Aponte, and Ennoble Reach Management Corp., alleging that their negligence caused his injuries.

At the time of Sharkey's accident, A&R was insured by Evanston under a CGL policy that promised to pay "those sums that [A&R] becomes legally obligated to pay as damages because of 'bodily injury' . . . caused by an 'occurrence' . . . ." The Evanston policy defined "Bodily Injury" as "bodily injury, sickness or disease . . . ." "Occurrence" is defined as "an accident . . . ." The policy contains a common declarations page, which explains that the policy includes the "declarations, together with the [c]ommon [p]olicy [c]onditions and [c]overage [f]orm(s) and any [e]ndorsement(s) . . . ."

Immediately following the declarations page is a schedule of attached forms.  Under the general liability section, Evanston explicitly identified the following form as part of the policy: "EXCLUSION – EMPLOYER'S LIABILITY AND BODILY INJURY TO CONTRACTORS OR SUBCONTRACTORS" (capitalized emphasis in original) (subcontractor employee exclusion).  The subcontractor employee exclusion provides that the Evanston policy does not apply to:

> "Bodily Injury" to any:
>
> > (1) Contractor or subcontractor while working on behalf of any insured;
> >
> > (2) Employee, volunteer worker, leased employee or temporary worker of such contractor or subcontractor; or
> >
> > (3) Additional subcontractor, including the employees, volunteer workers, leased employees or temporary workers of such contractor or subcontractor indicated in Paragraph (1) above.

The exclusion further states that it applies "even if the claim against any insured alleges negligence or any other wrongdoing in the . . . selection, hiring, or contracting . . . supervision or monitoring . . . or training . . . of any contractor or subcontractor for whom any insured is or was legally responsible . . . ."

4

A&R submitted Sharkey's complaint to Evanston and requested a defense and indemnity. Relying on the subcontractor employee exclusion, Evanston agreed to defend A&R and Aponte under a reservation of rights, but cautioned A&R that "to the extent . . . Sharkey could be considered an employee of A&R . . . or an employee . . . of . . . a contractor or subcontractor, there is no coverage for the Sharkey [l]awsuit."

Evanston's investigation confirmed that Sharkey was employed by YVPV to perform construction work at the Jersey City project. Accordingly, it filed a complaint pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, naming all defendants, and sought an order that it was "not obligated to defend or indemnify [A&R] or . . . Aponte for the Sharkey [l]awsuit" because coverage was excluded pursuant to the subcontractor employee exclusion. Evanston also served the declaratory judgment complaint on Sharkey and named him as an interested party.

After Aponte, A&R, Ennoble, and the Tsengs failed to answer the complaint, Evanston moved for default judgment. In an October 13, 2017 order, the court granted Evanston's motion and ordered that Evanston "owe[d] no coverage obligation to . . . A&R . . . and Jose Aponte for any claims that have been or may be asserted by . . . Sharkey . . . ." Despite receiving notice of

Evanston's motion, Sharkey did not object to the court entering the default judgment.

Several months after the default judgment was entered, Sharkey sought discovery from Evanston. Thereafter, Evanston moved for summary judgment against Sharkey. Sharkey opposed the motion and cross-moved for summary judgment, seeking an order "declaring and adjudging that . . . [the] Evanston [policy] . . . affords insurance coverage to A&R . . . with respect to defense and indemnity as to [his] bodily injury claim" arising from the March 23, 2016 accident.

Evanston made two arguments in support of summary judgment. First, it argued that the October 13, 2017 default judgment resolved any insurance coverage issues related to Sharkey's claims and Sharkey was bound by that judgment. Second, Evanston maintained that the policy unambiguously excluded Sharkey's claims because he sustained "bodily injury" while an "employee" of a "subcontractor" of A&R.

In opposing Evanston's motion, and in support of his request for a declaratory judgment, Sharkey claimed that he was not bound by the October 13, 2017 default judgment. Additionally, Sharkey argued that he had a reasonable expectation of coverage because the declarations page of the

Evanston policy confirmed that A&R obtained commercial general liability coverage, but the declarations page did not refer to any exclusion limiting that broad coverage. Sharkey also asserted that the subcontractor employee exclusion was ambiguous and unenforceable, as its title, "Employer's Liability . . . ," suggested that it related only to A&R's worker's compensation liability. Finally, Sharkey contended that the subcontractor employee exclusion did not apply, as YVPV was not working "on behalf of" A&R.

After hearing oral arguments, the court entered orders on December 15, 2017 granting Evanston's motion and denying Sharkey's cross-motion. In its accompanying written statement of reasons, the court concluded that the October 13, 2017 default judgment was binding on Sharkey, as he could have "objected or otherwise intervened on the motion for default judgment as a party to this declaratory action."

The court also considered Sharkey's substantive arguments and determined that the Evanston policy's declarations page "did not create any reasonable expectations of coverage, notwithstanding the fact that a non-party to the insurance policy has asserted such an expectation." In examining the subcontractor employee exclusion, the court explained that the language is "clear, unambiguous, and thus, enforceable." Finally, the court noted that

YVPV was hired by A&R as a subcontractor, and was therefore working "on behalf of" A&R. This appeal followed.

Sharkey raises two primary arguments on appeal. First, he maintains that he is not bound by the October 13, 2017 default judgement because his joinder under the Declaratory Judgment Act permitted him to seek an adjudication that his claim was covered by the Evanston policy.

Second, he argues, as he did in the trial court, that the declarations page in the Evanston policy created a reasonable expectation that a standard commercial general liability policy would cover a subcontractor's employee's claims. Specifically, Sharkey asserts that the declarations page expressly listed multiple risks that were "not covered," but failed to mention the subcontractor employee exclusion, which suggested coverage was extended for that risk.

Relying on Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J. Super. 340 (App. Div. 1994), Sharkey contends that A&R's reasonable expectation of coverage "cannot be contradicted by the policy's boilerplate unless the [d]eclarations . . . clearly so warn[] the insured." He also asserts that the declarations page created a reasonable expectation of coverage based on the reference to classification code number 91581 for "contractors-subcontracted work," and related rating

information.[2]  Having considered these arguments in light of the record and applicable legal principles, we conclude the court correctly determined that Sharkey was bound by the October 13, 2017 default judgment, and that the Evanston policy did not cover Sharkey's claim.

II.

We disagree with Sharkey's assertion that the court's October 13, 2017 default judgment was not binding on him.  Pursuant to N.J.S.A. 2A:16-56, "[w]hen declaratory relief is sought, all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding."  A declaratory judgment will only have an effect on persons joined as interested parties.  N.J.S.A. 2A:16-57; see also Tal v. Franklin Mut. Ins. Co., 172 N.J. Super. 112, 116 (App. Div. 1980) ("The failure to join [an interested party] robs the resulting judgment of any binding effect on [him or] her."); Constant v. Pacific Nat'l Ins. Co., 84 N.J. Super. 211, 222 (Law Div. 1964) ("[T]he intent of the . . . Declaratory Judgment Act was only to be binding over those parties before the court . . . .").

---

[2] On appeal, Sharkey has abandoned the argument he made before the trial court that the subcontractor employee exclusion was ambiguous and did not apply to his claim.

Evanston properly joined Sharkey as an interested party to the declaratory judgment action, as he was the party injured in his underlying negligence action. As such, pursuant to the Declaratory Judgment Act, we conclude Sharkey is bound by the court's default judgment in Evanston's favor. As the trial court correctly noted, "Sharkey could have objected or otherwise intervened on the motion for default judgment as a party to this declaratory action." See Riehle v. Margolies, 279 U.S. 218, 225 (1929) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.").

## III.

In ruling on a summary judgment motion, a trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). An appellate court reviews a grant of summary judgment de novo, using the same standard as the trial court. Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003). Thus, we must determine whether a genuine issue of material fact is present and, if not, evaluate whether the trial court's ruling on the law was

10

correct.  See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167-69 (App. Div. 1998).

Even if the default judgment was not binding on Sharkey, we conclude that the court correctly granted Evanston's motion on the merits.  Guided by the principles regarding interpretation of insurance contracts detailed below, we are not persuaded that there is any ambiguity in the Evanston policy as it relates to coverage for Sharkey's claim.  The declarations page clearly states that the policy includes the "declarations, together with the [c]ommon [p]olicy [c]onditions and [c]overage [f]orm(s) and any [e]ndorsement(s) . . . ."  On the next two pages of the policy, Evanston, in capitalized letters, listed the forms schedule and explicitly identified the subcontractor employee exclusion.

"The interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996) (citing Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474, 479 (App. Div. 1977), rev'd on other grounds, 81 N.J. 233 (1979)).  Further, whether an insured's expectations are objectively reasonable is a question of law to be determined by the court. Bromfeld v. Harleysville Ins. Cos., 298 N.J. Super. 62, 79 (App. Div. 1997).

Our analysis is guided by well-established principles concerning interpretation of insurance contracts. Insurance policies are subject to special scrutiny, as they are contracts of adhesion. Gibson v. Callaghan, 158 N.J. 662, 669 (1999). While insurance companies are "expert[s] in [their] field" that unilaterally prepare "complex instruments," insureds are typically "laymen unversed in insurance practices and provisions." Ibid.

As a general rule, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). When an ambiguity does exist, the ambiguity is resolved against the insurer and in favor of coverage. Kopp v. Newark Ins. Co., 204 N.J. Super. 415, 420 (App. Div. 1985). However, "not every 'far-fetched interpretation of a policy will be sufficient to create an ambiguity requiring coverage' . . . ." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 528 (2012) (quoting Cobra Prods., Inc. v. Fed. Ins. Co., 317 N.J. Super. 392, 400-01 (App. Div. 1998)). "A genuine ambiguity exists when the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428-29 (App. Div. 2004) (quoting Lee v. Gen. Accident Ins. Co., 337 N.J. Super. 509, 513 (App. Div. 2001)). "[W]hen

considering ambiguities and construing a policy, courts cannot 'write for the insured a better policy of insurance than the one purchased.'" Flomerfelt, 202 N.J. at 441 (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989)).

Further, courts must not read one provision of a policy in a way that would render another provision meaningless. Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 47 (App. Div. 2010). However, "[i]n exceptional circumstances, 'even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured.'" Gibson, 158 N.J. at 671 (quoting Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36 (1988)).

Generally, "in the absence of fraud or inequitable conduct on the part of the carrier," "an insured is chargeable with knowledge of the contents of an insurance policy." Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 204 (App. Div. 2003). "Normally, insurance purchasers are expected to read their policies and 'the law may fairly impose upon [them] such restrictions, conditions and limitations as the average insured would ascertain from such reading.'" Sears Mortgage Corp. v. Rose, 134 N.J. 326, 348 (1993) (quoting Bauman v. Royal Indem. Co., 36 N.J. 12, 25 (1961)).

IV.

As noted, Sharkey, relying on Lehrhoff, contends that its reasonable expectation of coverage, gleaned from the declarations page, cannot be frustrated by the subcontractor employee exclusion unless Evanston warned A&R on the declarations page that the policy did not cover liability A&R's subcontractor's negligence. We disagree.

In Lehrhoff, we reversed an order dismissing a complaint that sought uninsured motorist coverage because the policy's exclusion was insufficient to overcome the insured's reasonable expectations of coverage based on the insurer's representations on the declarations page. Lehrhoff, 271 N.J. Super. at 342. We concluded that the insured was entitled to coverage based on the reasonable expectations doctrine because:

> [A] conscientious policyholder, upon receiving the policy, would likely examine the declaration[s] page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and the other basic information appearing thereon are accurate and in accord with his understandings of what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions,

14

conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language. We are, therefore, convinced that it is the declaration[s] page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration[s] page cannot be contradicted by the policy's boilerplate unless the declaration[s] page itself clearly so warns the insured.

[Id. at 346-47.]

The declarations page in Lehrhoff is distinguishable from that in the Evanston policy. In Lehrhoff, the court noted that the declarations page expressly identified the policyholder and his son in the list of drivers. Id. at 349. As a result, the court determined that the declarations page gave the policyholder a reasonable expectation that his son was covered that could not be overcome by the contradictory, difficult-to-locate language in the policy that limited family members to residents of the household. Id. at 349-50. Conversely, Sharkey asserts that the Evanston policy's declarations page should have included language specifying what was excluded from coverage. Further, A&R's insurance broker obtained the Evanston policy and was familiar with commercial liability insurance, unlike the average, unversed automobile

15

insurance policyholder, who is likely to rely on the declarations page. Id. at 346-47.

Additionally, in Zacarias v. Allstate Ins. Co, 168 N.J. 590 (2001), the Supreme Court limited Lehrhoff's holding and explained "[w]e do not, however, interpret Lehrhoff to require an insurer to include an . . . exclusion on the policy's declarations sheet in all cases." Id. at 602. The Court stated that "an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented." Id. at 603.

The Zacarias court enforced the insurance contract as written, finding "no ambiguity, inconsistency, or contradiction between the declarations sheet and the body of plaintiff's policy" because "the declarations sheet alerts the insured that the coverages and limits of liability" are contingent on the policy's provisions and "the exclusion itself is written in direct and ordinary terms." Id. at 602-03. Further, in Zacarias, the declarations sheet included the language "SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS," indicating the coverages and limits of liability. Id. at 593; see also Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 539 (App. Div. 2005) ("Lehrhoff . . . does not establish a bright[-]line rule that the declaration[s] page controls

where important additional terms of the policy are not included on the declaration[s] page but are reflected elsewhere.").

Here, the declarations page, similar to that in Zacarias, states "[t]hese declarations, together with the [c]ommon [p]olicy [c]onditions and [c]overage [f]orm(s) and any [e]ndorsement(s), complete the [Evanston] policy." Even though the declarations page lacked any reference to the subcontractor employee exclusion, it clearly identified the exclusion in capitalized letters in the form schedule.

In sum, we conclude that no ambiguity exists in the Evanston policy because the declarations page and the policy's terms and exclusions clearly alert the average policyholder to the "boundaries of coverage." See Simonetti, 372 N.J. Super. at 428-29. In our view, construing the policy in accordance with Sharkey's interpretation would be writing "for the insured a better policy of insurance than the one purchased." Flomerfelt, 202 N.J. at 441 (quoting Walker Rogge, Inc., 116 N.J. at 529).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION